# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 02-1249

_____

| | | |
|---|---|---|
| David Williams; Bonnie Williams, | * | |
| | * | |
| Appellants, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Western District of Missouri. |
| Watkins Motor Lines, Inc., | * | |
| | * | |
| Appellee. | * | |

_____

Submitted: September 9, 2002

Filed: November 20, 2002

_____

Before WOLLMAN, HEANEY and BYE, Circuit Judges.

_____

HEANEY, Circuit Judge.

David Williams and Bonnie Williams appeal from the district court's dismissal of their wrongful discharge complaint against their former employer Watkins Motor Lines, Inc., and denial of their motion for leave to file a first amended complaint. We reverse and remand the case to the district court for further proceedings.

# I. BACKGROUND

David and Bonnie Williams (hereinafter "David" and "Bonnie"), a married couple, were hired by Watkins Motor Lines, Inc., beginning in 1997 as an over-the-road truck driving team. On or about January 31, 2001, the Williamses reported to Watkins's Kansas City terminal and received a linehaul tripsheet that directed them to drive a tractor/trailer along the Missouri interstate highway system. Before starting the trip, David drove the tractor to a nearby weigh station, and discovered the vehicle weighed significantly in excess of 80,000 pounds. Under Missouri law, a tractor cannot be driven on Missouri highways if it exceeds 80,000 pounds. Mo. Rev. Stat. § 304.180.3 (2001). David drove the tractor back to the terminal. Upon the request of the dispatcher, David weighed the tractor at a different weigh station; the tractor again exceeded the legal limit. David returned to the terminal and advised the dispatcher that the tractor was overweight.

The dispatcher then asked David if he and Bonnie would consider driving a single-axle tractor. The Williamses agreed to do so. Upon weighing the single-axle tractor, however, David discovered that it, too, exceeded the Missouri weight limit. He returned to the terminal and informed Bonnie and the dispatcher of the vehicle's weight. David then suggested to the dispatcher that he and Bonnie receive an accommodation, meaning an adjustment to the load or truck to bring it into compliance with weight restrictions. The dispatcher agreed to provide the Williamses with a different tractor if they stayed the night. In the morning, however, a Watkins employee informed David that because he and Bonnie had refused a load, they should leave the terminal and return to their home. Approximately one week later, Watkins informed the Williamses that they were terminated from employment because they had refused an assigned load.

The Williamses filed suit against Watkins Motor Lines in Missouri state court alleging wrongful discharge. Watkins removed the case to the United States District

Court for the District of Missouri, and moved to dismiss the suit on grounds that it fell under the jurisdiction of the National Labor Relations Act, and was therefore pre-empted. The Williamses subsequently filed a motion to amend their complaint, which added a fraud claim. Watkins responded by arguing the additional claim was inextricably intertwined with the original claim for wrongful discharge, and therefore also was pre-empted by the NLRA. The district court denied the motion and dismissed the complaint.

## II. DISCUSSION

### A. "Concerted Activity" within the NLRA

The first issue in this case is whether David and Bonnie engaged in "concerted activity" within the meaning of 29 U.S.C. § 157, thus precluding review by the district court. We conclude that they did not.

The National Labor Relations Act gives employees the right to engage in concerted activities[1] for the purposes of mutual aid and protection. 29 U.S.C. § 157. This language contemplates a context where employees are organizing or have organized, and need to be protected from retaliatory measures by their employer. 29 U.S.C. § 102.

NLRA preemption analysis has developed into two distinct doctrines, which are commonly referred to as Garmon[2] and Machinists[3] preemption. Thunderbird

---

[1]The NLRA is silent as to what precisely constitutes "concerted activity." N.L.R.B. v. City Disposal Systems, Inc., 465 U.S. 822, 831 (1984).

[2]San Diego Building Trades Council v. Garmon, 359 U.S. 236 (1959)

[3]Lodge 76, Int' Ass'n of Machinists and Aerospace Workers v. Wisconsin Employment Relations Comm'n, 427 U.S. 132 (1976)

Mining Co. v. Ventura, 138 F.Supp.2d 1193, 1196 (D.Minn. 2001). Garmon preemption, which the appellees suggest is applicable here, "protects the jurisdiction of the National Labor Relations Board . . . by displacing state jurisdiction over conduct which is 'arguably within the compass of § 7 or § 8 of the Act.'" Id. (quoting St. Thomas - St. John Hotel & Tourism Assoc. v. United States Virgin Islands, 218 F.3d 232, 239 (3rd Cir. 2000)). The Garmon doctrine supports the theory that Congress has an overriding interest in nationally uniform application of the NLRA, rather than in protecting particular conduct of private bargaining parties. St. Thomas, 218 F.3d at 239. Machinists preemption, on the other hand, focuses on protecting the collective bargaining process from interference by the states. Since we do not think Machinists preemption applies in this case, and neither party has briefed the Machinists preemption analysis, we defer to the Garmon analysis, which poses the question of whether the Williamses' conduct was either clearly or arguably "concerted activity" within the meaning of § 7 of the NLRA.

One component of protected concerted activity is "concertedness." Calvin Sharpe, 'By Any Means Necessary' – Unprotected Conduct and Decisional Discretion Under the National Labor Relations Act, 20 Berkeley J. Emp. & Lab. L. 203, 207-8 (1999). This component requires some sort of group activity; individuals acting on their own behalf are not engaged in concerted activity. Id. The issue has been raised whether actions taken individually, but presumed to be of interest and benefit to other employees, should be considered concerted activity under a "constructive concerted activity" theory. NLRB v. City Disposal Systems, Inc., 465 U.S. 822 (1984). The NLRB, however, does not recognize such individual activity as concerted.[4]

---

[4]In a NLRB decision involving a single employee who resisted driving an unsafe truck, the NLRB rejected the claim that such activity was "concerted," even though the employee was asserting contractual rights. See Meyers Indus. Inc., 281 NLRB 882 (1986).

Watkins contends that David's statements and acts, such as returning the tractor after weighing it and requesting an accommodation, were not taken up individually but were concerted because his actions received Bonnie's implicit approval. As a practical matter, we cannot see the significance of Bonnie's possible approval. David and Bonnie were hired as a team. They worked together exclusively, and shared all of their trips. It puzzles this court how David and Bonnie could have engaged in concerted activity, since for all intents and purposes they operated as a single unit. Bonnie could not have left the terminal and driven the tractor without her team driver.

Watkins argues that the surest sign of concerted activity was the fact that no tractor left Watkins's Kansas City terminal on January 31, 2001, because neither David nor Bonnie accepted the load. Without a second driver to help share the burden of driving the long hours necessary to deliver the load, however, Bonnie was not capable of delivering the load on time by herself had she opted to drive the truck in spite of the excess weight. She would have failed in her job, no doubt reasonable grounds for termination in the trucking industry. The Williamses did not organize to work together, but operated as one unit. Although Watkins asserts that Bonnie was aware of and agreed with David's refusal, we believe Bonnie's awareness or lack thereof is irrelevant. All the evidence suggests that the Williamses were a single individual for the purposes of employment. To treat them now as separable is to deny the original arrangement between Watkins and the Williamses.

Counsel for Watkins suggested at oral argument that because this question is being litigated, it is an arguable point, and therefore constitutes "arguably concerted activity." We disagree. The Garmon doctrine should not be used to preclude any discussion of whether an activity falls within NLRB jurisdiction. Following Watkins's line of reasoning, any dispute between two parties regarding whether an activity fell within sections 6 or 7 of the NLRA would automatically fall within NLRB jurisdiction because there was a dispute, thereby meeting the "arguable"

requirement. We reject this interpretation because it would vastly expand the jursidiction of the NLRB, and more importantly, deny the courts its basic function - to hear and resolve arguments between parties that may have no other form of relief.

This is not a standard labor arrangement. Counsel for Watkins could not point to any NLRB cases at oral argument where team drivers (much less married team drivers) were treated as workers engaging in concerted activity. Our research unearthed only one case, and it involved team drivers that did not engage in exclusive driving relationships. See C.D.S. Lines, Inc., 313 NLRB 296 (1993). We therefore believe this case does not fall within the NLRB's jurisdiction.

## B. "Mutual Aid or Protection"

Finally, given the "mutual aid or protection"[5] requirement of § 7, it is also doubtful that David's actions would be considered by the NLRB. According to the record, David honestly believed that the tractors exceeded the Missouri highway weight restrictions. These regulations do not provide suggestive guidelines; they are the law. Violating them is no more an option than violating health standards in food production. David's refusal to leave the Kansas City terminal after having weighed the two tractors a total of three times appears to be reasonable. This case differs from cases where employees were fired after refusing to drive a company vehicle because they believed driving the vehicle was dangerous. See Prill v NLRB, 755 F.2d 941 (D.C. Cir. 1985). In such cases, employees have made decisions designed for their own protection and, by extension, for the protection of their fellow employees, and can be reasonably considered to be engaging in concerted activity. In this case, David Williams was following Missouri law. He was not acting for his benefit, or for any other employee's benefit. We find no reason to describe David's adherence to applicable law as concerted activity.

---

[5]The NLRA does not define "mutual aid or protection."

### III. CONCLUSION

The Williamses do not fall within the jurisdiction of the NLRB because their acts do not constitute "concerted activity" under the NLRA.  We reverse the district court's dismissal of the original complaint against Watkins Motor Lines and the denial of appellants' motion for leave to file first amended complaint, and remand for further proceedings consistent with this opinion.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.